U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2012 JAN -3 AM 10: 58
CLERK
BY ＿＿PM＿＿
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:11-cr-73 |
| ) | |
| RICHARD BARKER ) | |

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**
(Doc. 34)

This matter came before the court on November 29, 2011 for oral argument on Defendant Richard Barker's motion to suppress evidence. (Doc. 34.) Defendant is charged with two counts of knowingly possessing one or more matters containing visual depictions involving the use of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).

Defendant moves to suppress evidence seized pursuant to a search warrant of his residence issued on April 26, 2011 because (1) the information contained in the supporting affidavit was stale; (2) the affidavit contained an irrelevant and highly prejudicial prior conviction that should have been excluded from the probable cause determination; (3) the affidavit failed to provide expert testimony that the images depicted actual minors; and (4) the search warrant was not supported by probable cause. The Government opposes suppression, arguing that the information was not stale, the Magistrate Judge properly considered Defendant's prior conviction, expert testimony is not required, and the search warrant was supported by probable cause, or, in the alternative, the officers were reasonably allowed to rely on the warrant based on the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

The Government is represented by AUSA Christina E. Nolan. Defendant is represented by Lisa B. Shelkrot, Esq.

## I. Findings of Fact.

Defendant challenges a search warrant for his residence, which authorized a search and seizure of materials pertaining to the solicitation, enticement, coercion, persuasion, inducement, and sexual exploitation of a minor, including images of and files containing images of child pornography in any form. The application in support of the search warrant included the affidavit of FBI Special Agent Jennie Emmons, which incorporated the investigation performed by Task Force Officer ("TFO") Dustin Lingle.

The Emmons affidavit describes Special Agent Emmons's prior experience investigating child pornography, which includes employment for thirteen years as an FBI Special Agent and several years at the FBI's Innocent Images Program. During this employment, Special Agent Emmons conducted online undercover investigations of federal violations of child pornography and sexual exploitation of children laws.

The Emmons affidavit further describes Special Agent Emmons's knowledge of typical characteristics of possessors of child pornography, including that they often collect sexually explicit or suggestive materials in a variety of media and may use these materials to sexually gratify themselves or "to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts." (Doc. 1-3 at 16.) In addition, child pornography collectors often possess and maintain their "hard copies" of child pornography in their home or some other secure location for many years. By maintaining their collections "close by, usually at the individual's residence," a collector may view the collection, "which is valued highly." (*Id.* at 17.) Possessors of child pornography often "prefer not to be without their child pornography for any prolonged period of time," and this behavior "has been documented by law enforcement officers involved in the investigation of child pornography[.]" (*Id.* at 17-18.)

Special Agent Emmons participated in an investigation of Defendant's possession of child pornography, which included reviewing evidence obtained by TFO Lingle, who acted as an online undercover FBI agent. On February 14, 2011, TFO Lingle used a computer connected to the Internet to access a publicly available peer-to-peer ("P2P") file

sharing program. He observed that a "friend" with the username "riverbankbl" was logged into the program. TFO Lingle accepted riverbankbl's "friend request" which TFO stated that riverbankbl "got [Lingle's] name from imgsrc files." On February 14, 2011, TFO Lingle browsed riverbankbl's shared directories and found files containing child pornography. TFO Lingle downloaded 129 files directly from riverbankbl.

Special Agent Emmons reviewed the downloaded files and concluded that they almost exclusively consisted of image files depicting nude or scantily clad prepubescent and teenage males. Some of these images, in turn, depicted minors engaged in sexually explicit conduct, including minors engaged in actual or simulated masturbation. The affidavit contains Special Agent Emmons's descriptions of three of the files downloaded directly from riverbankbl:

   a) 4713795Mvm.jpg. This image is a lascivious depiction of a minor male's penis. In this image, a prepubescent or early adolescent male is posed nude wearing a silver wig in what appears to be a studio setting. The minor's nude penis is exposed.

   b) 4797700CPI.jpg. This image shows a nude prepubescent male lying on the floor with a hand from another individual (who is off-screen, except for a hand and arm) close to touching the minor's penis.

   c) 4797704mCp.jpg. This image shows two nude males on a couch. They are prepubescent or early pubescent. One of the two minors is masturbating. The image depicts a lascivious exhibition of the minors' genitalia.

(Doc. 1-3 at 14.)

One of the files TFO Lingle downloaded from riverbankbl included the wording "teenboys18yold" and was not an image file. It showed a login page related to imgsrc.ru, which is a Russian website which facilitates the trading of child pornography over the Internet.

Special Agent Emmons averred that an Internet Protocol address ("IP address") is "a unique number used by a computer to access the internet," assigned by an Internet Service Provider ("ISP"). (*Id.* at 5.) On February 16, 2011, the Government served an administrative subpoena for the date and time riverbankbl's files were downloaded on

Comcast Cable Communications, the ISP for riverbankbl's IP address. On February 22, 2011, in response, Comcast disclosed that, at the date and time requested, riverbankbl's IP address was assigned to an account registered to Defendant, at 455 Hill Road in Brookline, Vermont. The results indicated that the account was active and included email addresses for Defendant and his wife.

Agents confirmed that Defendant resides at 455 Hill Road in Brookline, Vermont through a variety of sources. In addition, TFO Lingle ran a criminal history check and discovered that Defendant is a registered sex offender. Special Agent Emmons also conducted a criminal history check which revealed that Defendant had been arrested on September 25, 2001, for sexually assaulting a fourteen-year-old male victim. Defendant's criminal record indicates that he was convicted on October 17, 2002, and sentenced to five to ten years in jail, all suspended except six months. Defendant remained on probation for that offense as of February 14, 2011.

On April 12, 2011, Special Agent Emmons conducted physical surveillance of Defendant's residence and observed a mailbox with the name Barker and the number 455 next to the driveway leading to the residence.

On April 26, 2011, the court issued a search warrant for Defendant's residence. On April 27, 2011, Special Agent Emmons executed the search warrant with other FBI agents at the 455 Hill Road address. At the time of the search, the residence's door was unlocked, and no one was present. FBI seized numerous items, including several computer-related items. They left a copy of the search warrant, a list of seized items, and Special Agent Emmons's business card.

On April 28, 2011, Defendant made incriminating statements to Special Agent Emmons during a telephone call. He seeks to suppress both the fruits of the search warrant and all evidence obtained as a result of it including his statements.

## II. Conclusions of Law and Analysis.

As noted, Defendant raises four challenges to the search warrant which the court addresses both individually and collectively.

## A. Whether the Search Warrant Application Relied on Stale Evidence.

Defendant first contends that the information which supported the search warrant was stale and therefore unreliable for the purposes of establishing probable cause. "While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). "Two critical factors in determining whether facts supporting a search warrant are stale are 'the age of those facts and the nature of the conduct alleged to have violated the law.'" *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)). "The determination of whether information presented in support of an application is sufficiently current to support a finding of probable cause is one that must be made on the basis of the facts of each case." *Martino*, 664 F.2d at 867.

"When a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (quoting *United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996)) (determining time between defendant's incriminating statements written in his journal dated five years earlier and date of search warrant application did not render information stale because "as a pedophile [defendant] would be likely to hoard pornographic images of children in his home for extended periods of time.").

Numerous courts have found that information which is months, if not years old, is not stale when a suspect is alleged to possess child pornography. *See, e.g., United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned."); *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (upholding warrant based on information ten months old where "the [agent] explained that collectors and distributors

5

of child pornography . . . 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *United States v. Ricciardelli*, 998 F.2d 8, 12 n.4 (1st Cir. 1993) (stating "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years").

Here, seventy-one days passed between the date of Defendant's alleged downloading and the issuance of the warrant. In her affidavit, Special Agent Emmons described her training and experience which supported her conclusion that possessors of child pornography typically maintained their collection close in their homes for many years. In addition, TFO Tingle supplied information that supported a conclusion that Defendant was recently accessed a child pornography trading web site and was still using the Internet address from which the alleged child pornography had been sent.

In light of the relatively brief period of time between Defendant's alleged download of child pornography and the execution of the search warrant, and the nature of the crime under investigation, it was reasonable to expect that evidence of that crime would remain at Defendant's residence which was the physical address to which Defendant's Internet address was connected. *See United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (requiring a "nexus between the items sought and the particular place to be searched") (internal quotation marks omitted). Accordingly, the information contained in the search warrant application was not stale and was appropriately used to establish probable cause.

### B. Whether the Search Warrant Application Included Allegedly Irrelevant and Prejudicial Information.

Defendant next challenges the information regarding his prior conviction set forth in the search warrant application. He asserts such information was both irrelevant and highly prejudicial. The Government counters that such information had some probative value with regard to the crime under investigation and was not likely to prejudice a magistrate judge's probable cause determination.

The search warrant application stated that Defendant "is a Registered Sex Offender," and that he was "arrested, on September 25, 2001, for sexually assaulting a

14-year-old male victim. He was convicted of this crime, and is currently under the supervision of the Vermont Department of Corrections." (Doc. 1-3 at 15.) Defendant does not challenge the truthfulness of this information.

It is well-established that "[p]rior convictions are a relevant consideration in determining probable cause." *Wagner*, 989 F.2d at 73; *see also United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (noting defendant's prior conviction provided further support of the probable cause determination); *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006) (finding no error in trial court's reliance on seven-year-old conviction of possession of child pornography in upholding search warrant directed at same illegal activity); *Howard v. Vandiver*, 731 F. Supp. 1290, 1297 (N.D. Miss. 1990) ("A person's prior conviction for similar criminal acts may be considered for the purposes of establishing probable cause, despite the fact that such evidence might not be admissible at a criminal trial arising out of evidence found in the resulting search.") Correspondingly, as a general proposition, the inclusion of defendant's prior conviction for a crime that involved a sex crime against a minor was not improper.

Defendant nonetheless cites *United States v. Falso* in arguing that a prior conviction cannot be used to establish probable cause. *United States v. Falso*, 544 F.3d 110, 123 (2d Cir. 2008). *Falso* is inapposite. There, the Second Circuit merely agreed that a defendant's conviction for endangering the welfare of a child, which involved the sexual abuse of a minor, was not related to the pending charge of child pornography and could not alone support a search warrant where there was no evidence demonstrating that child pornography had been accessed. In so ruling, the court observed "[t]hat the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough. They are separate offenses and . . . nothing in the affidavit draws a correlation between a person's propensity to commit both types of crimes." *Id.*

Unlike the circumstances in *Falso*, here Special Agent Emmons's affidavit established a connection between those who commit sexual assaults against children and those who possess child pornography, asserting that child molesters may use child pornography to persuade and lower the inhibitions of their victims. In addition, there was

7

evidence that Defendant had actually obtained child pornography and had demonstrated an interest in a website devoted to the trading of child pornography. Moreover, the alleged child pornography downloaded from Defendant's account depicted males in the same age group as the Defendant's fourteen year old male victim. Defendant's prior conviction was thus relevant to the probable cause determination.

As for whether evidence of the prior conviction was unduly inflammatory, the court is mindful that the probable cause determination was made by an experienced magistrate judge who had been exposed to a vast spectrum of criminal evidence and who was decidedly unlikely to be unduly prejudiced and inflamed by a brief reference to Defendant's prior conviction. *See United States v. Probber*, 752 F. Supp. 640, 642-43 (S.D.N.Y. 1990) (rejecting defendant's contention that inclusion of his prior felony convictions in search warrant application "was meant to incite and inflame, and to deceive the [m]agistrate. [The magistrate] who issued the search warrant[] is an experienced attorney and a talented magistrate judge, who would not be so affected.").

The Defendant's prior conviction was thus properly before the magistrate judge as part of the totality of the circumstances he was asked to evaluate in determining probable cause.

### C. Whether the Search Warrant is Defective Because it is Not Supported by Expert Testimony.

Defendant next argues that the Emmons affidavit only states that Special Agent Emmons and TFO Lingle viewed images that "depicted prepubescent and teenage pubescent males, nude or scantily clad. Some of the nude images depict minors engaged in sexually explicit conduct[.]" (Doc. 34 at 4.) According to Defendant, these allegations could describe images of "virtual child pornography" that do not reflect actual children engaging in sexually explicit conduct, and because Special Agent Emmons did not set forth any information regarding her ability to distinguish between real and virtual children, or her training, experience, or expertise in determining the age of individuals based on photographs, the information cited cannot be used to establish probable cause.

The Government disagrees, and contends no specialized knowledge of an alleged child's age or status as "real" is necessary in determining probable cause.

When seeking a search warrant for child pornography, there must be "a probability or substantial chance" that the suspect possesses images of actual children, but the government is not required to make "an actual showing" that real children are depicted in the images. *United States v. Lapsins*, 570 F.3d 758, 765 (6th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.1 (1983)). Courts have therefore not required expert testimony regarding children depicted in images of child pornography as a condition precedent to a valid search warrant. *See United States v. Battershell*, 457 F.3d 1048, 1054 (9th Cir. 2006) ("Indeed, we have accepted, for purposes of an affidavit in support of a search warrant, the conclusory age estimates made by civilians and other untrained lay witnesses without demanding a detailed explanation of how the witnesses reached that conclusion."); *United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (accepting computer repairman's statement that images on computer showed "minors"); *United States v. Bonczek*, 2008 WL 4615853, at *11 (S.D.N.Y. Oct. 16, 2008) (concluding detective's "representations that the images were of young children, 'with genitalia exposed,' and 'posed in a sexually explicit manner' provided [the judge] with sufficient information to find that probable cause existed to believe that [defendant's] apartment and computer contained images of child pornography.").

In this case, Special Agent Emmons described sufficient qualifications and experience to assess the ages of the children depicted in the images. By describing the images as depicting "prepubescent or pubescent minors" engaging in sexually explicit or lewd and lascivious conduct, the affidavit excludes virtual child pornography, "which by definition does not depict minors[.]" *United States v. Williamson*, 439 F.3d 1125, 1135 (9th Cir. 2006) (defining "child pornography" as "any visual depiction of sexually explicit conduct where the production involves the use of a minor [defined as any person under the age of eighteen] engaging in sexually explicit conduct") (internal quotation marks omitted)). As a result, the search warrant was supported by sufficient evidence that the individuals depicted in the files were actual minors.

### D. Whether the Search Warrant was Supported by Probable Cause.

Finally, Defendant challenges whether the search warrant was supported by probable cause. To make this determination, courts employ a "totality of the circumstances" test:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. at 238. "The quanta of proof necessary to establish probable cause is only the probability, and not a prima facie showing, of criminal activity[.]" *Wagner*, 989 F.2d at 72 (quoting *Illinois v. Gates*) (internal quotation marks omitted). "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." *Id.*

Considering Defendant's challenges to the search warrant both independently and collectively, the court is left with the firm conclusion that there was ample probable cause to support the warrant. Indeed, even in the absence of evidence of Defendant's prior conviction, probable cause would exist. The Emmons affidavit describes how TFO Lingle downloaded 129 images of nude or scantily clad prepubescent or teenage males directly from an Internet user whose IP address was assigned to Defendant's account and residence. Of the 129 images downloaded, the agents identified at least three images that appear to constitute child pornography. The Emmons affidavit describes how those who distribute, receive, or possess child pornography often possess and maintain the "hard copies" of such materials in their home for many years. Law enforcement verified that Defendant lived at the Brookline residence and had referenced a website known for the trading of child pornography. This evidence gives rise to a "fair probability" that evidence of the crime of possession of child pornography would be found at Defendant's

residence. The search warrant was thus supported by probable cause and suppression of the evidence seized and Defendant's subsequent statements is not warranted.[1]

## CONCLUSION

For the reasons stated above, the court hereby DENIES Defendant's motion to suppress evidence (Doc. 34.).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 3rd day of January, 2012.

Christina Reiss, Chief Judge
United States District Court

---

[1] For this reason, the court does not evaluate the Government's alternative argument that the motion to suppress should be denied in accordance with the good faith exception established under *Leon*.